IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GRETCHEN VALENCIA, individually and
on behalf of all others similarly situated,

       Plaintiff,

v.                                                      Case No. 1:18-cv-01071-KG-JFR

ARMADA SKILLED HOME CARE OF NM LLC,
ARMADA HOME HEALTHCARE OF SOCORRO, LLC,
and CHRISTOPHER TAPIA,

       Defendants.

### RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER, ISSUANCE OF CORRECTIVE NOTICE AND SANCTIONS

Armada Skilled Home Care of NM LLC ("Armada") and Christopher Tapia ("Mr. Tapia") (collectively "Defendants") submit this response to Plaintiff's Emergency Motion for Protective Order, Issuance of Corrective Notice and Sanctions filed June 25, 2020 [Doc. 48] ("the "Motion"). The Motion should be denied because Mr. Tapia did not commit misconduct by sending out a text to his employees correcting what he believed was an improper notice sent by Plaintiff. The assessment of sanctions is not warranted against Mr. Tapia.

### I.    FACTS

1.    The Court ordered in its Memorandum Opinion and Order [Doc. 46] that:

Plaintiff shall revise the proposed Notice as set forth above and send the revised Notice and Opt-In Consent Form by first-class U.S. Mail, email, and text message to all members of the FLSA Collective Class. Potential class members will have 75 days from the mailing of the Notice and Consent Forms to return their signed Consent Forms to Plaintiff's counsel for filing with the Court.

[Doc. 46, p. 8].

2. The parties were required to agree to the modifications to the notice as specified by the Court, prior to sending out the notice.

3. Plaintiff initially sent a proposed notice to Defendants. Defendants approved that form of notice.

4. When the notice was sent out by Plaintiff, it included two "click throughs"[1] to notify Plaintiff's counsel that the recipient intended to opt in as a member of the class and the notice was on a form not previously provided to Defendants. Further, the final notice sent by Plaintiff was not provided in advance to Defendants as required by the Court. *See* Notice, Exhibit D to Affidavit of Chris Tapia filed concurrently herewith and e-mail from Patti Williams to Teresa Becvar on June 17, 2020 [Doc. 48-4, p. 5].

5. Defendants requested that Plaintiff withdraw the notice and make the corrections noted in the e-mail. [Doc. 48-4, p. 5].

6. In response, Plaintiff sent an e-mail raising additional issues and called the issues raised by Ms. Williams "baseless" and declined to retract the notice. *See* e-mail from Teresa Becvar to Patti Williams [Doc. 48-4, p. 3-4].

7. On or about June 16, 2020, Mr. Tapia received a text message from an employee, Mary Driscoll, a registered nurse, telling him that she had received a notice of the lawsuit. She sent him a copy of what was provided to her. Mr. Tapia noted that what had been provided did not comply with the Court's order. He asked Ms. Driscoll if she had received anything else, and she sent him another link with another consent to join the lawsuit. That was all she received,

---

[1] A "click through" is an internet marketing device that provides a hyperlink to the advertiser's destination, in this case an "opt in" option to join the class action. There was never any indication to the Court or Defendants' counsel that Plaintiff intended to use a hyperlink.

according to Ms. Driscoll. Mr. Tapia responded through a text message to his current employees explaining that there were errors in the notice sent and that a correction would be sent. He stated clearly that whether the employees chose to join the lawsuit was entirely up to them. *See* Tapia Affidavit, Exhibit B.

8. On June 18, 2020, in response to Plaintiff's email, Defendants sent another e-mail to Plaintiff, pointing out that: a) Mr. Tapia was reacting to a question received from one of his employees about the content of the notice, b) the employee had not received the second page of the notice that was sent, c) the second page contained important information that was ordered by the Court to be in the notice, and d) Mr.Tapia sent another text message to the same employees who had received the notice providing the information that the Court ordered to be included. *See* e-mail from Patti Williams to Teresa Becvar [Doc. 48-4, p. 2].

9. The notice provided to Mr. Tapia by the employee is attached to his Affidavit as Exhibit A.

10. Mr. Tapia retracted his text message on June 17, 2020 and posted the form sent by Plaintiff initially, with both pages. *See* Exhibit E to Tapia Affidavit.

## II. POINTS AND AUTHORITIES

**A.  Response To Plaintiff's Introduction**

Plaintiff begins by stating that this is not the first time that Defendants have engaged in "coercive and otherwise improper communications with potential class members," [Doc. 48, p. 1], referring to Defendants undertaking an audit, which according to Plaintiff, was "invalid under the FLSA." *Id*., fn. 1. This allegation has not been addressed by the Court and is not relevant to the Motion. The Court should ignore this assertion.

Plaintiff also states that Mr. Tapia falsely claimed that "The notice fail[ed] to mention that the attorney receive a large portion of the settlement." *Id*. This, too, is an assertion which should be rejected. The Order stated: "The Court agrees with Defendants that the Notice should specify the percentage of fees that will be paid to the attorneys if Plaintiff prevails or otherwise explain how the attorneys' fees will be calculated. Plaintiff shall revise the Notice to include this information." [Doc. 46, p. 7]. The form circulated by Plaintiff which is at issue, contained the ordered information on the second page of the form. The individual employee who approached Mr. Tapia seeking information concerning the form did not receive the second page of the form which contained the ordered disclosure and, thus, did not provide it to Mr. Tapia. To Defendants' knowledge, no employee received the second page of the form. *See* Tapia Affidavit, ¶¶ 7 and 20. Thus, Mr. Tapia was not incorrect when he responded by sending out the text to his employees and made no false claims based on the information he was provided by his employee.

**B.     Response To Plaintiff's Statement Of The Facts**

The Court is aware of the proceedings in the case thus far so they will not be restated. The only factual issues relevant to the Motion are whether the form of the notice sent had the approval of the Court and Defendants and whether the sending of the remedial text by Mr. Tapia was misconduct.

The Court required that Plaintiff get approval from Defendants before sending out the notice. While Plaintiff sent a preliminary notice to Defendants for approval, the notice sent to the putative plaintiffs was not the same as was provided to Defendants. The notice had two click throughs in the body which were not presented in the notice given to Defendants. Tellingly, Plaintiff did not provide the actual notice sent to the employees as part of the Motion. The actual notice sent is Exhibit D to the Tapia Affidavit. It must be noted the first click though is placed

4

before the required text of the Order.  The result intended, or otherwise, of the click through preceding the body of the notice was to make it more likely that the individual receiving the notice would not read the entire notice.  The individual could press the click before reading the notice, including the information concerning the attorneys' fees, the information about the effect of joining the lawsuit, and information about the amount of attorneys' fees that counsel for Plaintiffs would be entitled to in the event of success.  The Court specifically ordered that this information be contained in the notice, but if the individual reading the notice pressed the first virtual button, the individual would not be aware of the information concerning the attorneys' fees.

When Defendants saw the actual notice sent, they objected in the e-mail and requested that Plaintiff immediately withdraw the notice already provided to the putative class members.  *See* June 17, 2020 e-mail from Williams to Becvar [Doc. 48-4, p. 5].  Soon after the notice was sent to the putative plaintiffs, one of those recipients, Ms. Driscoll, contacted Mr. Tapia about the receipt of the notice.  Mr. Tapia had not seen the actual notice sent out by Plaintiff and the notice he was provided by Ms. Driscoll only contained one page.  Having only seen the one page, Mr. Tapia thought that the notice did not contain the information ordered by the Court and sent out the text message.  See Exhibit B to Tapia Affidavit.  Mr. Tapia believed the notice sent by Plaintiff was not as the Court ordered.

Mr. Tapia's text stated what information he understood the judge had ordered the notice to contain.  Mr. Tapia also reassured the recipients of the notice that he was not interfering with their right to join the lawsuit.  Contrary to the "relevant facts" alleged by Plaintiff in the Motion, there was no ulterior nefarious intention for his sending out the text to his current employees.  Mr. Tapia had not received the entire notice and, in any event, he withdrew his text.  There was no attempt

to present a biased or distorted view of the "potential" benefits to joining the lawsuit or to coerce any employees to join or to not join. It is, in fact, Plaintiff who is attempting to coerce putative plaintiffs to join the lawsuit by providing two click throughs, not earlier disclosed, to prevent the individual from reading the entire notice through to the end to apprise the individual of what are his or her obligations would be as a class member and detriments of joining the class action.

Finally, the last statement in Mr. Tapia's text, "The choice to join the lawsuit is yours and yours alone," is not in any way "oblique," as Plaintiff alleges. The statement did not specify or imply that Armada could not retaliate against the individual if that person chooses to join the lawsuit. This statement is a genuine reflection of the intent meant to be expressed by Mr. Tapia: he would not count the joining of the lawsuit against any of his employees, meaning he would not retaliate against anyone who joined the lawsuit. Mr. Tapia was not attempting to and did not impugn the integrity or standing of the attorneys for Plaintiff. He was not attempting to resend or restate all of the information contained in the notice; he was solely attempting to correct what he saw as the provision of inadequate information according to what the Court had ordered when time was of the essence. The text was not coercive.

In response to the "facts" stated in the Motion regarding subsequent communication with counsel for Defendants, Mr. Tapia did, in fact, withdraw and retract his text as requested by Plaintiff before Plaintiff made that request. It is not improper for Mr. Tapia to contact his employees who have not opted to join the lawsuit, who are not otherwise represented. *See* Alwert v. Cox Commc'ns, Inc. (In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.), 835 F.3d 1195, 1203 (10th Cir. 2016). Plaintiff again inappropriately questions the sincerity of Mr. Tapia's actions without any evidence to do so, by implying that the explanation that he was only

shown the first page of the notice was not true.  Further, Plaintiff questions the integrity of counsel for Defendants by failing to provide no further information or proof that such actions were actually taken.  [Doc. 48, p. 6].  An attorney who represents that an action has been taken by the attorney is entitled to the assumption that the attorney is not lying.  In this case, that assumption is accurate: Mr. Tapia had already withdrawn his text.  *See* Exhibit C to Tapia Affidavit.

**C.      Defendants' Response To Plaintiff's Argument Of The Law**

     **1.      The Notice sent by Plaintiff was Improper; Defendants did not Mislead Any Employee by sending the Withdrawn Text.**

Defendants agree that the District Court has the authority to regulate the notice process, an authority which the Court has undertaken in this case by ordering that the notice be provided in a certain fashion.  The Court also required that the notice be approved by both parties prior to its circulation.  The notice provided to the putative class members disregarding the Court's authority to regulate the notice process by Plaintiff violated the Court's Order: it contained at least two click throughs, one in the interior of the notice, in an effort to get more employees to join.

Defendants agree that the Court ordered that a notice be sent.  [Doc. 48, p. 8].  The Court did not order any particular notice be sent since the notice had to be approved by Defendants before publication.  The issue is whether the notice that was sent, containing the unapproved click throughs, satisfies the Court's order that the notice be approved by Defendants and that the notice reflect the Court's ruling.  It is undisputed that Defendants never saw or consented to the notice that was sent and, if Plaintiff insisted on sending that notice with both click throughs, Defendants

would have sought intervention from the Court, as stated in Defendants' email.² *See* June 17, 2020 e-mail from Williams to Becvar [Doc. 48-4, p. 5].

As stated in the e-mail correspondence, it is not improper for an individual party to contact another unrepresented individual party. "But prospective plaintiffs—that is, unnamed members of a putative class—are not parties to class litigation." *See* Smith v. Bayer Corp., 564 U.S. 299, 131 S.Ct. 2368, 2379–80, 180 L.Ed.2d 341 (2011) (unnamed member of putative class was not a "party" to proceeding in which court denied class certification, and unnamed member is not precluded by any judgment in that litigation). "And the great weight of authority, some of which we set out in a footnote, is that the attorneys in the putative class action do not represent them as class counsel."

> Fn 2:  Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010) ("[A] district court's decision to certify a class must precede the appointment of class counsel."); Schick v. Berg, 430 F.3d 112, 117 (2d Cir. 2005) (under Texas law, "[u]ntil a trial court determines that all prerequisites to certification are satisfied, there is no class action, the case proceeds as an ordinary lawsuit, and attorneys for named class members have no authority to represent or otherwise act on behalf of the unnamed class members" (internal quotation marks omitted)); Hammond v. City of Junction City, 126 Fed.Appx. 886, 889 (10th Cir. 2005) (under the Kansas Rules of Professional Conduct, "there was no attorney-client relationship between the attorney and [a city employee with management duties who was a prospective class member] until the class was certified"); Restatement (Third) of the Law Governing Lawyers § 99 cmt. l (Am. Law Inst. 2000) ("[A]ccording to the majority of decisions, once the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class; prior to certification, only those class members with whom the lawyer maintains a personal client-lawyer relationship are clients."); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07–445 (2007) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. If the client has neither a consensual relationship

---

² Defendants have even now, not seen an actual copy of the notice sent in the form it was sent to putative class members. They have received a paper copy of the notice provided by Mr. Tapia when he requested a copy from the employee. Defendants do not know whether the actual notice contains more click throughs than the ones provided by the Armada employee.

>with the lawyer nor a legal substitute for consent, there is no representation. Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period."); 2 McLaughlin on Class Actions § 11:1 n.1 (12th ed. 2015) (collecting cases); *but see id.* at nn.41 & 45 (citing two contrary cases).

Alwert v. Cox Commc'ns, Inc. (In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.), 835 F.3d 1195, 1203 (10th Cir. 2016).

The text sent by Mr. Tapia was not false or misleading. Mr. Tapia was only provided the first part of the notice: not the part containing the attorneys' fees and costs explanation. The Court specifically addressed those provisions in the ruling and Mr. Tapia was aware of that ruling. The information provided in Mr. Tapia's text was accurate: Mr. Tapia was aware that the Court required Plaintiff's counsel to state that they would receive attorneys' fees if they were successful but the Court did not state that the amount was specifically to be. Plaintiff provided that in the proposed notice sent to Defendants: "Subject to court approval, the attorneys will request fees consisting of a reasonable percentage of the settlement (typically 30%-40% percent) or their actual fees incurred in prosecuting the action."

The text sent by Mr. Tapia was also accurate when it stated that the provision regarding that the costs could be assessed against Plaintiffs if they were not successful was to be included in the notice, according to the Court. Further, if the putative class member clicked the first click through and did not read further in the notice, that person would not have been advised of the possibility of the cost assessment or collection of attorneys' fees against Plaintiffs.

In the Motion, Plaintiff cites Stransky v. HealthONE of Denver, Inc., 929 F. Supp. 2d 1100, 1105 (D. Colo. 2013) [Doc. 48, p. 9] to support the assertion that misleading class members coercing prospective class members into excluding themselves from the litigation or undermining

9

cooperation with or confidence in class counsel is to be prevented. The text sent by Mr. Tapia is, by its terms, not coercive, or an attempt to undermine cooperation with class counsel.

In <u>Stransky</u>, the Court held:

> While a court may exercise discretionary control over a class action, "this discretion is not unlimited." Gulf Oil, 452 U.S. at 101, 101 S.Ct. 2193. If a court issues "an order limiting communications between parties and potential class members[, it] should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101–02, 101 S.Ct. 2193. Any such restrictive order must be narrowly tailored to avoid impinging upon the parties' constitutional rights of free speech and association. Id. at 102, 101 S.Ct. 2193.

In this case, there is no court order limiting communication between parties and potential class members. There is no reason, based solely on Mr. Tapia's text, for the Court to issue a restrictive order. He was communicating with his current employees. If an Order is entered, it must be narrowly tailored, as required in <u>Stransky</u>. Further, "in many cases there will be no problem [with communications to putative class members] requiring remedies at all." <u>Gulf Oil Company v. Bernard</u>, 452 U.S. 89, 104, 101 S.Ct. 2193, 68 L. Ed.2d 693 (1981). "Once conditional certification is granted, communications with the putative class are not prohibited 'where a party has not engaged in misleading, coercive, or otherwise abusive communications.'" <u>Longcrier v. HL–A Co., Inc.</u>, 595 F.Supp.2d 1218, 1227 (S.D.Ala. 2008); *see, e.g.*, <u>Parks v. Eastwood Ins. Servs., Inc.</u>, 235 F.Supp.2d 1082, 1085 (C.D.Cal. 2002) (permitting communications by defendant that described the case in general terms and stated that employees could contact defendant's counsel with questions).

Plaintiff in this case presumably recognizes that no order limiting communication between Defendants and the putative class members has been entered. Plaintiff speaks in terms of "when a party has misinformed potential plaintiffs," and "in FLSA collective actions, interference with

notice is even more egregious than in a Rule 23 class action," [Doc. 48, p. 10] but Plaintiff does not point to where, other than the text sent by Mr. Tapia, any Defendant has misinformed putative class members or interfered with presenting notice.  The text simply pointed out that there were problems with the notice received by the employees and a correct notice would be sent.

Plaintiff's statement that the text "preyed upon their fears and concerns about joining a lawsuit against their current employer while misrepresenting the potential risks and rewards of their participation" is belied by the actual statements in the text.  It is a stretch to say the text "preyed upon the fears" of employees when no employee has presented evidence to support those allegations.

Plaintiff also again wrongly alleges that Defendants have engaged in improper communications before.  Plaintiff does not identify the "improper communication."   In footnote 1 of the Motion, Plaintiff asserts that Defendants "independently embarked on an "overtime due analysis" of the timekeeping and payroll records of their employees, unilaterally determined the wages and interest they were ostensibly owed, cut them checks, and obtained signed "acknowledgments" from some of these individuals attesting that their wages due were fully paid. *See* ECF No. 25-1 at 6-7, 14-17.  These releases were not supervised or approved by the Court, and they are thus invalid under the FLSA as a matter of law." [Doc. 48, p. 1, fn 1].  The reference is to Plaintiff's own brief: the Court has not confirmed that Defendants did anything improper in conducting the audit.  Defendants have not been "guilty" of previous improper communication and no such improper communication has occurred to date.

    **2.**       **All Relevant Documents have been Provided.**

Plaintiff asks that the Court order Defendants to produce all relevant documents so that the "Court and/or Plaintiff's counsel can determine the proper form and content of the proposed corrective notice." [Doc. 48, p. 12]. This impertinent request assumes a corrective notice based on Mr. Tapia's text is warranted rather than a corrective notice based on the publication of a notice that was not approved by the Court or Defendants. Aside from the attorney-client protected document, the documents being requested are addressed in this Response and included in Mr. Tapia's Affidavit. In his Affidavit, Mr. Tapia swore that he withdrew the text, and a copy of that withdrawal is attached to his Affidavit. In the Affidavit, Mr. Tapia states that the sent the original text and the retraction to all Armada's current employees. If and when the Court approves a corrective notice, that notice will be posted according to the Court's specifications by Defendants.

    **3.**       **Attorneys' Fees Should be Awarded to Defendants, Rather than to Plaintiff if any Fees are to be Awarded.**

Plaintiff requests that she be awarded attorneys' fees and costs for the filing of the Motion. If any party should be awarded such fees and costs, they should be awarded to Defendants for having to respond to this motion. It was Plaintiff's actions in sending the unapproved notice to all putative class members containing the click throughs which had not been approved by either the Court or Defendants. It was the unapproved notice that prompted Mr. Tapia to send his text, which he later withdrew, before the Motion was even filed. There was absolutely no need for Plaintiff to file the Motion.

Plaintiff cites <u>Belt v. Emcare, Inc.</u>, 299 F.Supp.2d 664 (E.D. Tex. 2003) for the position that Defendants should be ordered to pay the costs of sending a corrective notice. The corrective notice should be paid for by Plaintiff because she sent an unapproved notice initially. Again, it

12

was Plaintiff who caused the entire issue to arise by sending the unapproved notice prompting Mr. Tapia to send his now withdrawn text.

### III.   CONCLUSION

The filing of the Motion was unnecessary.  First, Plaintiff should have obtained consent from the Court for the notice that was actually to be sent and provided Defendants an opportunity to object to the inclusion of a click through feature and certainly to the click through feature preceding the text of the Notice.  Second, Plaintiff declined to withdraw the notice sent as requested by Defendants.  Third, Mr. Tapia sent his text then immediately withdrew that text before Plaintiff asked him to withdraw the text.  Fourth, Plaintiff has still not withdrawn the improper notice.  The Motion should be rejected: Plaintiff should be ordered to withdraw the improper notice, the Court should approve the actual notice sent with all the click throughs removed or limited to one at the end, and the Court should order Plaintiff to pay Defendants' attorneys' fees.

Respectfully submitted,

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

*[Electronically Filed]*

By  */s/ Patricia G. Williams*
    Patricia G. Williams
Attorneys for Defendants
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
PWilliams@wwwlaw.us

We hereby certify that on this 7th day of July, 2020,
a copy of the foregoing was filed electronically
through the CM/ECF system, which caused all
parties or counsel of record to be served
by electronic means, as more fully reflected on
the Notice of Electronic Filing.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By  */s/ Patricia G. Williams*
      Patricia G. Williams